UNITED STATE DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

PATRICK J. VERMURLEN and
SHERRIE R. VERMURLEN,

      Plaintiffs,                    Civil Action No. 1:06-cv-0828

vs.                                    Honorable Wendell A. Miles

AMERIQUEST MORTGAGE
COMPANY, Mortgagees; AMC
MORTGAGE SERVICES, Assignee;
DEUTSCHE BANK NATIONAL TRUST
COMPANY, as Assignee and/or
Trustee of AMERIQUEST MORTGAGE
SECURITIES, INC.,

      Defendants.

---

| | |
|---|---|
| Craig L. Monette (P58420)<br>Attorney for Plaintiffs<br>316 Morris Ave., Suite 310<br>Muskegon, MI 49440<br>231-725-6100 | Mark D. van der Laan (P55921)<br>Sarah E. Heineman (P66202)<br>Attorneys for Ameriquest Mortgage<br>Company, AMC Mortgage Services,<br>Inc., Deutsche Bank National Trust<br>Company, and Ameriquest Mortgage<br>Securities, Inc.<br>Dykema Gossett PLLC<br>300 Ottawa Avenue N.W., Suite 700<br>Grand Rapids, MI 49503<br>(616) 776-7500 |

PLAINTIFFS PATRICK AND SHERRIE VERMULREN'S BRIEF
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**Introduction and Summary of Plaintiffs' Position**

Defendants previously filed a motion for summary judgment in this matter. One of Defendants' arguments was that the forbearance agreement

1

executed by Plaintiffs waived their right to rescind the mortgage.  Plaintiffs filed a response to that motion stating that they were not able to waive their right to rescind due to the language of the Truth in Lending Act.  Plaintiffs concluded in their Response Brief that the essential issue remaining was whether or not the Bank provided the Vermurlens with clear and conspicuous notice of the right to rescind.  The documented evidence in this case demonstrates that the Bank did not provide clear and conspicuous notice.  Therefore, the Vermurlens have the right to rescind the Mortgage and recover their costs and attorneys fees for pursuing this action.

## Facts

On March 29, 2004, Defendant, Ameriquest Mortgage Company ("Ameriquest") and the Plaintiffs, Patrick and Sherrie Vermurlen (the "Vermurlens") closed on a new mortgage which was secured by the Vermurlens' personal residence.  The mortgage was essentially a refinancing transaction in which Ameriquest paid off a previous $123,567.70 loan held by Ameriquest. (Exhibit 1).   The closing took place at the Vermurlens' home and was handled by a notary public who simply provided the Vermurlens with the appropriate paperwork to execute.  Ameriquest did not have a representative at the closing and consequently the Vermurlens did not have any opportunity to review the documents or ask any questions about the loan and its final terms.

In the weeks following closing, the Vermurlens reviewed the loan more closely and determined that it did not contain the terms that they had expected.  For example, the interest rate was higher than previously disclosed

2

and an interest fee rate discount was not applied even though it was paid for by the Vermurlens. Ameriquest also failed to provide the Vermurlens the required disclosures of their right to cancel the loan transaction within three days. More specifically, Plaintiffs were not given the proper Notice of Right to Cancel form ("NORTC"). Ameriquest provided the Vermurlens with a form based on model form H-8, rather than model form H-9, which is specific to transactions in which the parties are refinancing a loan with the original creditor. (Exhibit 2). In addition to the wrong model form, Defendant also provided Plaintiffs with a "One Week Notice of Right to Cancel" (Exhibit 3).

The Truth in Lending Act (the "TLIA"), *15 U.S.C. § 1635* and *Regulation Z, § 226.23*, provides that a consumer who does not receive the proper notice of rescission has the right to rescind the transaction within three years of the closing date. Consequently, the Vermurlens provided notice of rescission to all Defendants (Exhibit 4) and Ameriquest Mortgage Company has acknowledged the notice. Defendants, however, have denied rescission of the 2004 mortgage (Exhibit 5).

Ameriquest has a documented history of improper and questionable loan transactions and has been investigated for predatory lending. For example, in January 2006, Ameriquest settled with several state Attorney Generals who sued Ameriquest regarding their lending practices. *Ameriquest Press Release*, January 23, 2006.[1] In settling the matter, Ameriquest agreed to allocate $295,000,000 to compensate borrowers for their improper practices. The

---

[1] (visited April 8, 2007)
<http://www.ameriquestmortgage.com/releaseArticle.html?news=nes20...>. (Exhibit 6).

company also provided $30,000,000 in legal fees to reimburse states for their legal fees and other costs.  *Id.*

In addition to the state settlement, Ameriquest has been sued numerous times over their practices by individuals.  A multi-district litigation proceeding was opened in the United States District Court, Northern District of Illinois, Eastern Division.  Approximately four hundred cases are currently before the court in the MDL.  Many of these cases share similar issues with the current case.  Borrowers have alleged that Ameriquest delivered Notice of Right to Cancel forms that did not properly identify the date that they could rescind the transaction and that the wrong form was provided since Ameriquest provided an H-8 form rather than the H-9 recommended in Regulation Z.  *In Re Ameriquest Mortgage Co. Mortgage Lending Practices Litigation, MDL No. 1715, Lead Case No. 05-CV-7097, Memorandum Opinion and Order, Document 143, page 2* (Exhibit 7).

Based on the case involved in the multi-district litigation and the state's Attorney General settlement, it is apparent that Ameriquest had a common practice of closing their loans quickly with little regard to the technical requirements of the Truth in Lending Act.  After a borrower had difficulty making payments, Ameriquest would offer a one-sided forbearance agreement which forced the borrower to waive all the claims that they may have against Ameriquest for the improper loan and other fraudulent practices.  The forbearance agreement then protected Ameriquest from their predatory lending

4

practices and provided the framework for Ameriquest to argue for the dismissal of any claims from borrowers who filed a lawsuit to protect their property.

The Vermurlen case is essentially a situation where one of those borrowers has chosen to sue to prevent Ameriquest from claiming their home through foreclosure. Ameriquest did not prepare clear and conspicuous disclosures as required by the TILA. Therefore, Plaintiffs have the right to rescind their mortgage and keep their home.

## **Law and Analysis**

**1.   Summary Judgment Standard**

In considering a similar case involving the right to rescind for a Truth in Lending Act violation, *Budzynski v. Redman Homes*, 1997 U.S. Dist. LEXIS 12187 (D. Mich. 1997), the Western Distinct Court, Southern Division succinctly stated the standard for summary judgment:

> A party moving for summary judgment has the burden of showing that when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" are considered there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c)*; *Snyder v. Ag. Trucking Inc.,* 57 F.3d 484 (6th Cir. 1995). The movant may satisfy this initial burden by demonstrating that the non-moving party has failed to introduce sufficient evidence to support an essential element of the cause of action alleged. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986)*; Haverstick Enterprises Inc. v. Financial Federal Credit Inc.,* 32 F.3d 989, 993 (6th Cir. 1994). If the moving party meets its burden, the party against whom the motion is brought has the burden of proving that there is a genuine issue of material fact for trial. *Celotex,* 477 U.S. at 324-25, 106 S. Ct. at 2553(1986). Material facts are those facts which might affect the outcome of the action under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

When determining if summary judgment is proper, inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). However, the mere existence of a scintilla of evidence in support of the opposing party's motion is not sufficient to create a genuine issue of material fact, instead, there must be evidence on which the jury could reasonably find for the party opposing summary judgment. *Anderson,* 477 U.S. at 252, 106 S. Ct. at 2512.

**2.     The Vermurlens Have the Right to Rescind the Mortgage Since the Notice Received Was Not Clear and Conspicuous.**

Ameriquest did not provide the Vermurlens with clear and conspicuous disclosure of their right to cancel for three reasons. One, the Vermurlens received a notice based on model form H-8 rather than H-9. Two, Ameriquest also provided the Vermurlens with an addition form titled "One Week Notice of Right to Cancel." Three, the delivery of two different forms indicate a different timeframe for cancellation and rescission which is inherently confusing to a borrower.

The *Truth in Lending Act* (the "TLIA"), *15 U.S.C. § 1635* and *Regulation Z, § 226.23*, provide that a consumer who does not receive a clear and conspicuous notice of rescission has the right to rescind the transaction within three years of the closing date. The TILA was established to provide consumers with protection against lenders. *15 U.S.C. § 1601* et seq. Section 1635 of the TILA provides consumers with the right to rescind a transaction within certain parameters. The statute provides:

> (a) <u>Consumer's right to rescind</u>. (1) In a credit transaction in which a security interest is or will be retained or acquired in a

6

consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section.  (2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication.  Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.  (3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures, which occurs last.  If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of consumer's interest in the property, or upon sale of the property, whichever occurs first…

The TILA provides that a lender must provide specific notice to consumers regarding their right to rescind.  Section 1635 further states:

(b)  <u>Notice of right to rescind</u>.  In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the notice of the right to rescind to each consumer entitled to rescind.  The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:  (1) The retention or acquisition of a security interest in the consumer's principal dwelling.  (2) The consumer's right to rescind the transaction.  (3) How to exercise the right to rescind, with a form for that purpose, designated the address of the creditor's place of business.  (4) The effects of rescission, as described in paragraph (d) of this section.  (5) The date the rescission period expires.

As noted above, the TILA requires creditors to clearly and conspicuously disclose to borrowers their right to rescind, the length of the rescission period and to provide consumers with the appropriate forms to exercise their right to rescind.  *15 U.S.C. § 1635(a).*  If the lender does not provide the proper form, the borrower may rescind the loan at any time up to three years from the date of the original transaction.  *15 U.S.C. § 1635(f).*  The legislature considered

7

proper notice to be essential and has provided model forms for lenders to use in order to assure themselves that the have complied with the TILA's requirements.  The appendix to Regulation Z contains Model form H-8 which is the general rescission form (Exhibit 8) and H-9 which is the Rescission Model Form used for Refinancing with Original Creditor (Exhibit 9).  Consequently, lenders such as Ameriquest who develop their own forms or use the wrong one significantly increase the likelihood that a court may determine that they have not have provided clear and conspicuous notice to the borrower.

In the Seventh Circuit multi-district litigation involving Ameriquest, the court considered the H-8 vs. H-9 issue.  While reviewing the preliminary injunction issue and determining the likelihood of plaintiffs' success on the merits of their cases, the court stated that plaintiffs must demonstrate that Ameriquest provided improper NORTCs to borrowers which would include notices that omitted rescission deadlines or that were not intended for the type of transaction at issue or both.  *In Re Ameriquest Mortgage Co., Id. at page 4.* The court further noted that hypertechnicality reins in the application of the TILA.  *Id. (citing Smith v Cash Store Mgmt.*, 195 F.3d 325, 328 (7th Cir. 1999)).  The court ultimately ruled that plaintiffs had satisfied their burden since the presented copies of more than 150 incomplete NORTCs and more than forty improper H-8 forms that were delivered to Ameriquest borrowers. *Id.* at 5.

The Sixth Circuit recently considered these issues in *Handy v Anchor Mortgage Corporation*, 464 F.3d 760 (7th cir. 2006).  In this case, the lender provided the borrower with two different forms (Rescission Model Form H-9 and

8

H-8). The borrower argued that these two forms together did not disclose her right to rescind in a clear and conspicuous manner. *Id.* at 763.

The court reasoned that the standard regarding the sufficiency of the disclosures is determined from the standpoint of the ordinary consumer. *Id.* (citing *Rivera v Grossinger Autoplex, Inc.*, 274 F.3d 118, 1121-22 (7th Cir. 2001)). "Whether a particular disclosure is clear for purposes of the TILA is a question of law that 'depends on the contents of the form, not on how it affects any particular reader.'" *Id.* (citing *Smith v Check-N-Go of Ill., Inc.*, 200 F.3d 511, 515 (7th Cir. 1999)). In addition, the court stated that "[w]here more than one reading of a rescission form is 'plausible,' the form does not provide the borrower with a clear notice of [their] right to rescind…" *Id.* (citing *Porter v Mid-Penn Consumer Disc. Co.*, 961 F.2d 10666, 1077 (3d Cir. 1992))

Applying the above reasoning, the court in *Handy* court held in favor of the borrower stating that "Anchor's simultaneous provision of both a Form H-8 and a Form H-9 did not meet the TILA's clear and conspicuous disclosure requirement, especially with regard to the 'effects of rescission.' " *Id.* at 764. In *Handy*, the lender used the model forms, but didn't determine which one was appropriate to the transaction and submitted both of them to the consumer. Even in that situation, the court held that the lender did not meet the clear and conspicuous requirement since the TILA does not easily forgive technical errors. *Id.*

An examination of the notices received by the Vermurlens in this case indicates that Ameriquest did not meet the clear and conspicuous standard as required by the Truth in Lending Act for three reasons:

(1) The Vermurlens did not receive the appropriate notice since form H-8 was used rather than H-9 which is the appropriate form for refinancing with the original creditor.  This is a clear technical violation of the requirements of the TILA and is grounds for rescission.  As the court in *Handy* stated, the TILA does not easily forgive technical errors.  *Id.*

(2) Ameriquest provided an additional form titled One Week Cancellation Period.  This form is misleading and confusing since it actually only provides the borrower with six days to cancel and does not mention any right to rescind as required by 15 U.S.C. § 1635.  Therefore, a borrower may wait longer than the three days and believe that they still had a statutory right to rescind with all of the protections provided by the TILA.  Utilizing Ameriquest's form and timeframe would preclude a borrower from being able to rescind their mortgage which would be in violation of the TILA.  It is reasonable to believe that a consumer would have more than one plausible reading of these forms and therefore it is apparent that the Vermurlens did not receive a clear notice of their right to rescind.

(3) Simply providing two different notices is confusing and is not a clear and conspicuous disclosure of the right to rescind.  The combination of these forms is not clear and opens the door for a borrower to have more

than one plausible reading or understanding of the effects of the forms on their situation.

Ameriquest did not follow the requirements of the TILA. Consequently, the Vermurlens received improper notice of their rights to rescind when they executed their mortgage on March 29, 2004. Consequently, they had until March 29, 2007 to rescind the mortgage. They properly exercised their right to rescind on October 4, 2006, which was well within the three year time period provided by the statute.

## Conclusion

As a matter of law, the Plaintiffs, Patrick and Sherrie Vermurlen, are entitled to have the mortgage rescinded since Defendant, Ameriquest Mortgage Company, did not clearly and conspicuously provide the Vermurlens with the proper form of notice regarding their right to rescind. Therefore, Plaintiffs request that the court find in their favor and hold that the Vermurlens properly exercised their rights to rescind the mortgage and that the mortgage is rescinded. In addition, Plaintiffs request an award of reasonable attorneys' fees and costs pursuant to *15 U.S.C. § 1640(a)(3)*.

Dated: April 30, 2007					Respectfully submitted,

By: */s/ Craig L. Monette*
Craig L. Monette (P58420)
Attorney for Plaintiffs
316 Morris Ave., Suite 310
Muskegon, MI  49440
231-725-6100