**UNITED STATES DISTRICT COURT
IN THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

PATRICK J. VERMURLEN and SHERRIE
R. VERMURLEN,

             Plaintiffs,                            Civil Action No. 1:06-cv-0828

vs.                                           HONORABLE WENDELL A. MILES

AMERIQUEST MORTGAGE COMPANY,
Mortgagees; AMC MORTGAGE
SERVICES, Assignee; DEUTSCHE BANK
NATIONAL TRUST COMPANY, as
Assignee and/or Trustee of AMERIQUEST
MORTGAGE SECURITIES, INC.,

             Defendant.                   **ORAL ARGUMENT REQUESTED**

| | |
|---|---|
| Craig L. Monette (P58420) | Mark D. van der Laan (P55921) |
| Attorney for Plaintiff | Attorneys for Ameriquest Mortgage |
| 316 Morris Ave., Suite 310 | Company, AMC Mortgage Services, Inc., |
| Muskegon, MI 49440 | Deutsche Bank National Trust Company, and |
| 231-725-6100 | Ameriquest Mortgage Securities, Inc. |
| | Dykema Gossett PLLC |
| | 300 Ottawa Avenue N.W., Suite 700 |
| | Grand Rapids, MI 49503 |
| | (616) 776-7500 |

**DEFENDANTS' BRIEF IN OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiffs Patrick and Sherrie Vermurlen (the "Vermurlens") sued Defendants over a

2004 mortgage loan transaction with Ameriquest Mortgage Company ("Ameriquest"). All of

their claims, however, are barred and should be dismissed because in 2006 the Vermurlens

contractually waived and released all claims they had related to their 2004 mortgage loan

transaction. Further, the Vermurlens cannot rescind their 2004 mortgage loan transaction

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•300 OTTAWA AVENUE N.W., SUITE 700•GRAND RAPIDS, MICHIGAN 49503

because the notice of right to cancel they received at closing from Ameriquest met the statutory

and regulatory requirements of TILA and Regulation Z and the time for rescission has long ago

elapsed.

## FACTS

On August 22, 2002, the Vermurlens executed an Adjustable Rate Note (the 2002 Note)

in the amount of $124,000 with in an initial interest rate of 8.375%.  The first interest rate change

on the 2002 Note was scheduled for September 1, 2004, at which point the rate on the 2002 Note

would have increased to 10.375%.  (Declaration of Kailynn Bowling, **Exhibit A**, ¶ 3).

The Vermurlens were late numerous times in making their 2002 mortgage loan

payments.  On March 29, 2004, before the first interest rate change occurred, the Vermurlens

refinanced with Ameriquest and executed a new Adjustable Rate Note (the 2004 Note) in the

amount of $147,600 with an initial rate of 8.35% (a decrease from the 2002 Note) with the first

interest rate change scheduled for May 1, 2006.  In conjunction with the refinance, Ameriquest

did not charge the early prepayment penalty provided under the 2002 Note.  The Vermurlens also

took out more than $10,000 in cash as a result of the 2004 refinance.  (Exh. A, ¶ 4).

The Vermurlens again failed to make timely mortgage payments on their 2004 Note and

their mortgage loan account fell into serious default.  The Vermurlens and AMC Mortgage

Services, Inc., the servicer of their loan, discussed issues related to the mortgage loan transaction

and the Vermurlens' serious defaults.  During April 2006, Ameriquest and the Vermurlens

reached an agreement to resolve all issues related to the Vermurlens' 2004 mortgage loan

transaction and defaults. (Declaration of Carmen Armijo, **Exhibit B**, ¶¶ 3 and 4).

For the resolution of the parties' issues, the Vermurlens executed a Forbearance

Agreement (Exh. B, ¶ 4; see also, Forbearance Agreement, **Exhibit C**).  The Forbearance

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•300 OTTAWA AVENUE N.W., SUITE 700•GRAND RAPIDS, MICHIGAN 49503

Agreement provided for reinstatement of the Vermurlens' loan and set an agreed payment schedule so that the Vermurlens would cure their defaults and get their financial house in order. AMC Mortgage Services, Inc. agreed to forbear from exercising its rights under the Note and Mortgage.  Under the terms of the Forbearance Agreement, the Vermurlens knowingly released all of their claims and potential claims against Ameriquest and AMC Mortgage Services, Inc. related to their 2004 mortgage loan transaction. (Exh. B, ¶ 5; see also, Exh. C).

The Forbearance Agreement provides in relevant part as follows:

**<u>Releases</u>**

Effective upon the execution hereof, and notwithstanding any failure of Borrowers to satisfy any of the conditions precedent set forth above, Borrowers hereby agree that, without any further act, Lender is fully and forever released and discharged from any and all claims for damages or losses to Borrower's property or person (whether these damages or losses are known or unknown, foreseen or unforeseen, or patent or intent) including, without limitation, tort claims, demands, notions and causes of action of any nature, whatsoever arising under or relating to the Loan Documents or any of the transactions related thereto, prior to the date hereof, and borrowers waive application of California Civil Code Section 1542 which states the following:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Furthermore, Borrowers acknowledge that they intend these consequences even as to claims for damages that may exist as of the date of this release but which they do not know exist, and which, if known, would materially affect their decision to execute this Forebearance Agreement, regardless of whether their lack of knowledge is the result of ignorance, oversight, negligence, or any other cause.

(Exh. C, p. 2-3).

The Vermurlens also agreed that if they failed to perform under the terms of the Forbearance Agreement, AMC Mortgage Services, Inc. could foreclose upon the property immediately.  The Vermurlens initialed the release provisions and signed the Forbearance Agreement. (Exh. C, p. 3).

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•300 OTTAWA AVENUE N.W., SUITE 700•GRAND RAPIDS, MICHIGAN 49503

The Vermurlens later failed to perform their obligations under the terms of the Forbearance Agreement and AMC Mortgage Services, Inc. foreclosed as permitted by the Forbearance Agreement. (Exh. B, ¶ 6; Exh. C, p. 3). The Vermurlens counsel sent a letter stating the Vermurlens were rescinding their loan. The letter made no mention of any basis for rescission and the Vermurlens did not tender payment of the balance of the loan proceeds. Ameriquest declined to rescind the loan.

The Vermurlens then sued Defendants related to their 2004 mortgage loan transaction. The Vermurlens allege they are entitled to rescind their 2004 mortgage loan based upon the form of the Notice of Right to Cancel that Ameriquest provided them at closing of the 2004 mortgage loan transaction. (Notice, **Exhibit D**). The notice of right to cancel that Ameriquest provided the Vermurlens at closing informed them that the transaction would result in a "mortgage/lien/security interest" on their home. (Exh. D). The notice also gave them clear and conspicuous notice that they could cancel "this transaction," their 2004 mortgage loan transaction, "without cost, within THREE BUSINESS DAYS" from the date of the transaction. (Exh. D). The notice further advised the Vermurlens of the consequences of canceling and explained how they could cancel "this transaction." (Exh. D). The notice states clearly that the mortgage that would be created by the refinancing transaction would also be cancelled if they timely exercised their rescission rights. (Exh. D). Despite the clear and conspicuous notice, the Vermurlens did not act to rescind their 2004 mortgage loan transaction within the time permitted and only attempted to do so after foreclosure proceedings were commenced.

**LAW AND ARGUMENT**

I.    **The Vermurlens' Motion Should Be Denied and Their Lawsuit Should Be Dismissed Because They Released All Claims Related to Their 2004 Mortgage Loan Transaction.**

The Vermurlens released Ameriquest and AMC Mortgage Services, Inc., its agents, transferees, successors and assigns from liability for any and all claims related to their 2004 mortgage loan transaction. (Exh. B, p. 2-3.)  Under Michigan law the Forbearance Agreement is enforceable and the release provisions serve to prevent the Vermurlens from bringing any released claims against the Defendants. *Dresser v. Cradle of Hope Adoption Center, Inc.*, 358 F. Supp. 2d 620, 636-637 (E.D. Mich. 2005). The Vermurlens knew and certainly could have known about all potential claims at the time they entered the Forbearance Agreement.  Thus, all of their claims and potential claims were knowingly released. *Smith v. City of Flint School Dist.*, 80 Mich. App. 630, 633-634; 264 N.W.2d 368 (1978).  Even if the Vermurlens might not have understood the legal effect of the Forbearance Agreement which they executed, the release is enforceable. *Id.* at 633.

Courts interpret contractual releases using general contract principles. *BRB Printing, Inc. v. Buchanan*, 878 F. Supp. 1049, 1053 (E.D. Mich. 1995).  Thus, the scope of a release is determined by the plain meaning of the words in the release. *Burgess v. Clark*, 215 Mich. App. 542, 547-548; 547 N.W.2d 59 (1996).  A release that releases "any and all persons" unambiguously releases any and all parties. *Romska v. Opper*, 234 Mich. App. 512, 517; 594 N.W.2d 853 (1999).  The Vermurlens cannot argue that the Forbearance Agreement is infirm because it covers all claims and all parties to this action.  The scope of the agreement is valid and enforceable. *See, e.g.*, *Dresser*, *supra*, 358 F. Supp. 2d at 637-638 (waiver language in adoption agreement that released "any and all claims they may have now or in the future" is valid and enforceable.); *Skotak v. Vic Tanny Intern., Inc.*, 203 Mich. App. 616, 619; 513 N.W.2d 428

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•300 OTTAWA AVENUE N.W., SUITE 700•GRAND RAPIDS, MICHIGAN 49503

(1994) (release of "any and all claims, demands, damages, rights of action, or causes of action, . . . arising out of the [releasor's] use of the . . . facilities" is a valid, enforceable, and unambiguous disclaimer of all liability for all negligence, including releasee's own negligence).

In this case, the Vermurlens knowingly released all claims they had or could have had against Ameriquest, its agents, transferees, successors and assigns when they signed the Forbearance Agreement. The Vermurlens' claims in this action relate to their 2004 mortgage loan transaction. Accordingly, this lawsuit should never have been brought and must be dismissed in its entirety with prejudice.

**II.      Ameriquest Did Not Violate TILA By Providing the Vermurlens Notice of Right to Cancel.**

Under the Truth in Lending Act ("TILA"), 15 U.S.C. §1635(a), the Vermurlens had the right to rescind their March 29, 2004 mortgage loan transaction until midnight of the third business day following the closing of their loan. The Vermurlens admit they received notice of right to cancel at the closing of their 2004 mortgage loan transaction and they do not deny that they signed the Notice of Right To Cancel given them. They also do not deny that the notice apprised them that "Each borrower in this transaction has the right to cancel." (Exh. D). They argue, instead, that they should be permitted to rescind that mortgage because the form of the notice was not exactly patterned after the Federal Reserve Board's Model Form H-9. The Vermurlens conclude that Ameriquest used a technically incorrect form and argue that their rescission right was extended beyond the three day limit which expired at midnight on April 1, 2004. The Vermurlens contend that the Court should adopt the Seventh Circuit's hyper-technical requirements for the notice. The Sixth Circuit, however, does not apply such a rigid standard.

In *Mills v. Equicredit Corp.*, 172 Fed. Appx. 652; 2006 Fed. App. 0150N; (2006WL455158) (6th Cir. 2006) (attached as **Exhibit E**), a case similar to this case, the Sixth

Circuit affirmed the lower court's ruling that the plaintiffs receipt of a technically incorrect form of the Notice of Right to Cancel nonetheless informed them of their right to cancel the loan transaction. The court affirmed the lower court's dismissal of the lawsuit because plaintiffs had received and signed a notice that reasonably informed them of their right to cancel the transaction. Accordingly, their right of rescission had expired after elapse of the three day period set forth in the notice.

Other courts similarly have refrained from applying the extreme standard advocated by the Vermurlens. In *Santos-Rodriguez v. Doral Mortgage Corporation*, --- F.3d ---; (2007WL1153052) (1st Cir. 2007)( attached as **Exhibit F**), plaintiffs argued that their rescission right was extended to three years because they received a technically incorrect notice patterned on Model Form H-8 instead of one patterned on Model Form H-9. The Court of Appeals reviewed the defendant lender's notice of right to cancel and held that the lower court correctly ruled that the notice was sufficient to meet the statutory and regulatory requirements of TILA and Regulation Z.

The court noted that TILA does not make use of the model forms obligatory (*Santos-Rodriguez,* Exh. F at p.3, citing 15 U.S.C. 1604(b)) and TILA does not require perfect notice but a clear and conspicuous notice of the borrowers' rescission rights. (*Santos-Rodriguez,* Exh. F at p.3, citing *Veale v. Citibank*, 85 F.3d 577, 581 (11th Cir. 1996). The court examined the defendant lender's notice and concluded the defendant met its disclosure obligation because the notice explained to the plaintiffs that

> (1) they were entering a transaction that would result in a mortgage on their home; (2) they had a legal right to rescind "this transaction," without cost, within three days; and (3) if they were to rescind the transaction, the mortgage that would have been created by the refinancing transaction would also be cancelled. Because the form clearly stated that rescission was available only as to "this transaction," Doral clearly and conspicuously informed plaintiffs that any

rescission would only operate as to the current refinancing transaction.

(*Santos-Rodriguez,* Exh. F, at p.5).

The undisputed facts of this case mirror those in the *Mills v. Equicredit, supra,* and *Santos-Rodriguez v. Doral Mortgage, supra,* cases.  Here, Ameriquest provided the Vermurlens with notice that explained clearly and conspicuously that the Vermurlens had the right to cancel their 2004 mortgage loan transaction without cost within three business days from the closing. The Ameriquest notice also conspicuously states that the mortgage that was created by the refinancing transaction, if rescinded, would also be cancelled. (Exh. D).  Accordingly, the notice Ameriquest provided the Vermurlens met the statutory and regulatory requirements.

Because Ameriquest's notice sufficiently apprised them of their rescission rights, when the Vermurlens did not timely exercise their rescission rights within the three day time limit, their rescission rights elapsed.  Consequently, the Vermurlens are not entitled to rescission. Moreover, because the Vermurlens received sufficient notice of their rights and failed to timely exercise them, their lawsuit is time barred.  Accordingly, the Vermurlens motion should be denied and this lawsuit should be dismissed in its entirety with prejudice.

### CONCLUSION

FOR THESE REASONS, and the reasons stated in Defendants' brief in support of their motion for summary judgment, Defendants Ameriquest Mortgage Company, AMC Mortgage Services, Inc., Deutsche Bank National Trust Company, Ameriquest Mortgage Securities, Inc. respectfully request that the Court deny Plaintiffs' motion and grant Defendants Motion for Summary Judgment and enter an Order dismissing Plaintiffs' lawsuit in its entirety with prejudice and award Defendants their costs and attorneys fees.

Respectfully submitted,

DYKEMA GOSSETT PLLC


By:*/s/ Mark D. van der Laan*
    Mark D. van der Laan (P55921)
    Attorneys for Ameriquest Mortgage
    Company, AMC Mortgage Services, Inc.,
    Ameriquest Mortgage Securities, Inc., and
    Deutsche Bank National Trust Company
    300 Ottawa Avenue N.W., Suite 700
    Grand Rapids, MI 49503
    (616) 776-7500

Date: May 17, 2007

GR01\102469.2
ID\MDV

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•300 OTTAWA AVENUE N.W., SUITE 700•GRAND RAPIDS, MICHIGAN 49503