# EXHIBIT F



2007 WL 1153052                                                                                   Page 1

--- F.3d ----, 2007 WL 1153052 (1st Cir.(Puerto Rico))

**(Cite as: 2007 WL 1153052 (1st Cir.(Puerto Rico)))**

Only the Westlaw citation is currently available.

United States Court of Appeals,
First Circuit.
Johnny SANTOS-RODRIGUEZ; Maria
Betancourt-Castellanos; c/p Santos-Betancourt;
Lymary Rojas-Morales; Ranfi Velez-Roman; c/p
Velez-Rojas, Plaintiffs,
Appellants,
v.
DORAL MORTGAGE CORPORATION; Doral
Financial Corporation; XYZ Corporations,
Defendants, Appellees.
No. 06-1769.

Heard Dec. 6, 2006.
Decided April 19, 2007.

**Background:** Mortgagors sued mortgagee and its assignee for violation of the federal Truth in Lending Act (TILA) and sought rescission of their same-lender refinance loans. The United States District Court for the District of Puerto Rico, Jaime Pieras, Jr., Senior District Judge, granted defendants' motion to dismiss. Mortgagors appealed.

**Holdings:** The Court of Appeals, Stahl, Senior Circuit Judge, held that:
(1) mortgagee's failure to provide mortgagors with the appropriate Federal Reserve Board (FRB) form was not a per se violation of TILA and Regulation Z, and
(2) mortgagor's rescission notices, although not perfect, were sufficient to meet the statutory and regulatory requirements of TILA and Regulation Z.
Affirmed.

[1] Federal Courts ⇌776

170Bk776 Most Cited Cases

[1] Federal Courts ⇌797
170Bk797 Most Cited Cases
The Court of Appeals reviews de novo the grant of a motion to dismiss for failure to state a claim, accepting all well-pleaded facts as true and giving the party who has pleaded the contested claim the benefit of all reasonable inferences. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

[2] Consumer Credit ⇌50
92Bk50 Most Cited Cases
Mortgagee's failure to provide mortgagors with the appropriate Federal Reserve Board (FRB) form was not a per se violation of Truth in Lending Act (TILA) and Regulation Z, neither of which required exclusive use of the model forms. Truth in Lending Act, § 125(h), 15 U.S.C.A. § 1635(h); 12 C.F.R. § 226.23(b)(2).

[3] Consumer Credit ⇌50
92Bk50 Most Cited Cases
Truth in Lending Act (TILA) amendments were intended by Congress to provide higher tolerance levels for what it viewed as honest mistakes in carrying out disclosure obligations. Pub.L. No. 104-29, 109 Stat. 271, 272-73.

[4] Consumer Credit ⇌36
92Bk36 Most Cited Cases
Notices for same-lender refinance loans, which clearly stated that rescission was available only as to "this transaction," clearly and conspicuously informed mortgagors that any rescission would only operate as to the current refinancing transaction, as was required by Truth in Lending Act (TILA) and Regulation Z; even though disclosure statement did not affirmatively inform mortgagors, as general Rescission Model Form H-9 form would have, that rescission of refinance transaction would not also rescind their original mortgage, Model Form H-8 explained, among other things, that mortgagors were entering a transaction that would result in a mortgage on their home, that they had a legal right

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2007 WL 1153052                                                                                                            Page 2

--- F.3d ----, 2007 WL 1153052 (1st Cir.(Puerto Rico))

**(Cite as: 2007 WL 1153052 (1st Cir.(Puerto Rico)))**

to rescind "this transaction," without cost, within three days, and that if they were to rescind the transaction, the mortgage that would have been created by the refinancing transaction would also be cancelled. Truth in Lending Act, § 125(h), 15 U.S.C.A. § 1635(h); 12 C.F.R. § 226.23(d).

Appeal from the United States District Court for the District of Puerto Rico, Hon. Jaime Pieras, Jr., Senior U.S. District Judge.

Gary E. Klein, with whom Gillian Feiner, Roddy, Klein & Ryan, Juan M. Suarez Cobo, and Suarez Cobo Law Offices, PSC were on brief, for appellants.

Nestor M. Mendez-Gomez, with whom Heidi Rodriguez, Carlos C. Alsina-Batista, and Pietrantoni, Mendez & Alvarez LLP were on brief, for appellees.

Before SELYA, Circuit Judge, STAHL, Senior Circuit Judge, and HOWARD, Circuit Judge.

STAHL, Senior Circuit Judge.

*1 Plaintiffs brought suit against Doral Financial Corporation and Doral Mortgage Corporation (collectively, "Doral") for violation of the federal Truth in Lending Act (TILA), 15 U.S.C. §§ 1601-1667. Plaintiffs seek rescission of their home loans, and damages, based on Doral's alleged failure to provide them sufficient notice of their rescission rights. The district court granted Doral's motion to dismiss plaintiffs' claims. We affirm.

### I. Background

Because this case reaches us on appeal from the granting of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), we accept as true plaintiffs' well-pleaded factual allegations. *See Rogan v. Menino,* 175 F.3d 75, 77 (1st Cir.1999).

There are two sets of plaintiffs in this case. The first set, Johnny Santos-Rodriguez and Maria Betancourt-Castellanos ("the Santoses"), obtained an original home mortgage from Doral Mortgage in 1998. By March 2004, the Santoses had defaulted on 34 payments under the original loan. To maintain their home, they elected to refinance on March 13, 2004, again with Doral Mortgage. The new loan totaled $78,750, of which $72,883.45 was used to pay off the principal and finance charges due under the original loan, thus cancelling that loan. The parties dispute what was done with the $5,866.55 in additional proceeds from the refinancing. Doral argues that the entire amount was remitted to Doral as financing charges, while the Santoses claim that one month after the transaction was finalized, they received $1,300 in proceeds from Doral. [FN1] Within a year, Doral Mortgage assigned the Santoses' new loan to Doral Financial, [FN2] which was the legal holder of the note at the time this action was brought.

The second set of plaintiffs is composed of Lymary Rojas-Morales and Ranfi Velez-Roman ("the Rojases"). The Rojases obtained an original home mortgage with Doral Mortgage. [FN3] On August 27, 2003, the Rojases refinanced their original loan, again with Doral Mortgage. The refinancing loan totaled $104,500, of which $94,035.83 went to pay the principal balance and finance charges outstanding on the Rojases' original loan, which was cancelled. Of the remaining funds, $6,251.76 went to Doral Mortgage for refinancing fees, and $4,212.41 reverted to the Rojases as a new money advance.

Before closing on the refinancing loans, Doral provided the Santoses and Rojases with a Notice of Right to Cancel. The form was modeled on Federal Reserve Board Model Form H-8. *See* 12 C.F.R. § 226.23 (app.H-8). Both sets of plaintiffs received identical disclosure forms, and they acknowledged receipt by signing the documents. Below, we excerpt the relevant sections of the disclosure form that plaintiffs received:

> You are entering into a transaction that will result in a mortgage, lien or security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days ...
>
> If you cancel the transaction, the mortgage, lien or security interest is also cancelled.
>
> *2 If you decide to cancel this transaction, you may do so by notifying us in writing.... You may

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2007 WL 1153052     Page 3

--- F.3d ----, 2007 WL 1153052 (1st Cir.(Puerto Rico))

(Cite as: 2007 WL 1153052 (1st Cir.(Puerto Rico)))

use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below.

The TILA grants consumers a three-day rescission period for any consumer credit transaction where a security interest will be acquired by the lender in the consumer's principal dwelling. 15 U.S.C. § 1635(a). This three-day rescission period begins to run when the transaction is consummated or upon delivery of notice of the consumer's right to rescind, whichever occurs later. *Id.* However, the three-day rescission period is extended to three years if the lender fails to meet the disclosure requirements of the TILA. 15 U.S.C. § 1635(f). The Federal Reserve Board (FRB) has issued an implementing regulation known as Regulation Z, which governs, among other things, the disclosures that lenders must make to consumers. 12 C.F.R. § 226.1 *et seq.* Regulation Z includes an appendix of model forms for various consumer transactions, including Model Forms H-8 and H-9, which are at issue here. *See* 12 C.F.R. § 226.23 (app.H-8, H-9).

In 2005, plaintiffs informed Doral of their intention to rescind their refinance loans, arguing that Doral's alleged failure to disclose properly their rescission rights had extended the rescission period to three years. Thereafter, Doral issued written rejections of plaintiffs' attempts to rescind. In response, plaintiffs brought suit against Doral, originally framed as a class action, [FN4] in the United States District Court for the District of Puerto Rico, seeking rescission of their loans, and statutory and actual damages. The district court granted Doral's motion to dismiss for failure to state a claim, holding that Doral met its disclosure obligations by clearly and conspicuously informing the plaintiffs of their rescission rights. Plaintiffs now appeal the dismissal of their claims.

**II. Discussion**
[1] We review *de novo* the grant of a motion to dismiss for failure to state a claim, "accepting all well-pleaded facts as true and giving the party who has pleaded the contested claim the benefit of all reasonable inferences." *Palmer v. Champion Mortgage,* 465 F.3d 24, 27 (1st Cir.2006).

Plaintiffs make two arguments to support their assertion that the rescission period for their refinance transactions should be extended from three days to three years. First, they allege that Doral failed to comply with the TILA's disclosure requirements because it gave plaintiffs a form patterned on Model Form H-8, which is designed for general transactions, rather than one patterned on Model Form H-9, which is designed for same-lender refinancing transactions. *See* 61 Fed.Reg. 49,237-02 (1996). Second, plaintiffs argue that the form Doral used was misleading because it did not adequately explain the effects of rescinding a same-lender refinancing loan, as opposed to an original loan. We take these arguments in turn.

*3 [2] Plaintiffs' first approach is a non-starter. They insist, despite clear statutory and regulatory language to the contrary, that "if the creditor does not provide the 'appropriate form,' the borrower 'shall have' rescission rights." This is simply incorrect. The statute permits the lender to inform consumers of their rescission rights by using "the appropriate form of written notice published and adopted by the [Federal Reserve] Board, *or a comparable written notice* of the rights of the obligor." 15 U.S.C. § 1635(h) (emphasis added). The plain meaning of the word "or" makes clear that the lender may comply with its disclosure obligations by using a model form or, alternatively, a comparable written notice. Regulation Z is equally clear that either type of notice will satisfy the lender's obligation: "To satisfy the disclosure requirement ... the creditor shall provide the appropriate model form in Appendix H of this part *or a substantially similar notice.*" 12 C.F.R. § 226.23(b)(2) (emphasis added). In addition, the TILA plainly states that use of the model forms is not obligatory. *See* 15 U.S.C. § 1604(b) ("Nothing in this subchapter may be construed to require a creditor or lessor to use any such model form or clause prescribed by the Board under this section.").

In sum, because the plain language of the statute and regulations does not require exclusive use of the model forms, plaintiffs are incorrect to insist that Doral's alleged failure to provide the appropriate FRB form is a per se violation of 15

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2007 WL 1153052                                                                                                    Page 4

--- F.3d ----, 2007 WL 1153052 (1st Cir.(Puerto Rico))

**(Cite as: 2007 WL 1153052 (1st Cir.(Puerto Rico)))**

U.S.C. § 1635 and Regulation Z. [FN5]

Plaintiffs' second argument requires more analysis. They assert that Doral's use of a form patterned on Model Form H-8 rather than H-9 significantly misled them as to their rescission rights, because the effects of rescinding a same-lender refinance loan are different from the effects of rescinding an original loan. In particular, plaintiffs highlight that the form they received failed to disclose that if a same-lender refinancing loan is rescinded, the original loan is not cancelled, meaning that the lender retains a security interest in the property under the original loan, and the consumer reverts to paying off the original loan. Plaintiffs argue that a consumer would be less willing to rescind a same-lender refinance loan if he believed that as a result he would also have to repay the original mortgage.

Our analysis of this argument must start with the disclosure standard set forth in the TILA, which requires that lenders "clearly and conspicuously disclose" borrowers' rescission rights. 15 U.S.C. § 1635(a). Regulation Z elaborates on this disclosure standard by listing the five elements of clear and conspicuous disclosure:
> The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:
> (i) The retention or acquisition of a security interest in the consumer's principal dwelling.
> *4 (ii) The consumer's right to rescind the transaction.
> (iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.
> (iv) The effects of rescission, as described in paragraph (d) of this section.
> (v) The date the rescission period expires.

12 C.F.R. § 226.23(b)(1). The fourth element, requiring disclosure of the effects of rescission, is further explained at 12 C.F.R. § 226.23(d), which delineates several effects of rescission that must be disclosed to the consumer, including:
> (1) When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.
> (2) Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.
> (3) If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph (d)(2) of this section. When the creditor has complied with that paragraph, the consumer shall tender the money or property to the creditor or, where the latter would be impracticable or inequitable, tender its reasonable value.

*Id.*

[3] Most courts have concluded that the TILA's clear and conspicuous standard is less demanding than a requirement of perfect notice. [FN6] *See, e.g., Veale v. Citibank*, 85 F.3d 577, 581 (11th Cir.1996), *cert. denied* 520 U.S. 1198, 117 S.Ct. 1556, 137 L.Ed.2d 704 (1997) ("TILA does not require perfect notice; rather it requires a clear and conspicuous notice of rescission rights."); *Smith v. Chapman*, 614 F.2d 968, 972 (5th Cir.1980) ( "Strict compliance does not necessarily mean punctilious compliance if, with minor deviations from the language described in the Act, there is still a substantial, clear disclosure of the fact or information demanded by the applicable statute or regulation."); *Dixon v. D.H. Holmes Co.*, 566 F.2d 571, 573 (5th Cir.1978) ("The question is not whether [notice provided under the TILA] is capable of semantic improvement but whether it contains a substantial and accurate disclosure ...."); *see also Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 568, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980) ("*Meaningful* disclosure [under the TILA] does not mean *more* disclosure. Rather, it describes a balance between competing considerations of complete disclosure ... and the need to avoid ... [information overload].") (internal quotation and citation omitted) (emphasis in original). As this court has recently said, the 1995 TILA amendments, *see* Truth in Lending Act

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2007 WL 1153052                                                                                              Page 5

--- F.3d ----, 2007 WL 1153052 (1st Cir.(Puerto Rico))

**(Cite as: 2007 WL 1153052 (1st Cir.(Puerto Rico)))**

Amendments of 1995, Pub.L. No. 104-29, 109 Stat. 271, 272-73, were intended by Congress to "provide higher tolerance levels for what it viewed as honest mistakes in carrying out disclosure obligations." *McKenna,* 475 F.3d at 424.

**\*5** [4] Thus, the key question in this case is whether Doral clearly and conspicuously informed plaintiffs of their right of rescission and the effects thereof, in compliance with the requirements laid out in Regulation Z. We conclude that Doral met its disclosure obligations. The form plaintiffs received explained, among other things, that (1) they were entering a transaction that would result in a mortgage on their home; (2) they had a legal right to rescind "this transaction," without cost, within three days; and (3) if they were to rescind the transaction, the mortgage that would have been created by the refinancing transaction would also be cancelled. Because the form clearly stated that rescission was available only as to "this transaction," Doral clearly and conspicuously informed plaintiffs that any rescission would only operate as to the current refinancing transaction.

In addition, the form that plaintiffs received satisfied 12 C.F.R. § 226.23(d), which details the effects of rescission that must be disclosed. Most importantly, Doral's disclosure form informed plaintiffs that, "If you cancel the transaction, the mortgage, lien or security interest is also cancelled." This statement fulfilled the regulatory requirement that the lender disclose that, upon rescission of the current transaction "the security interest giving rise to the right of rescission becomes void." 12 C.F.R. § 226.23(d)(1). Contrary to plaintiffs' assertion, this disclosure is accurate even in same-lender refinance transactions such as those at issue here, because rescission of a refinance transaction does indeed cancel the entire security interest contemplated by the refinance agreement. In addition, rescission of the refinance transaction does not impact the lender's security interest under the original loan, which is held in abeyance until the rescission period has expired. *See* 12 C.F.R. § 226.23(c) ("Unless a consumer waives the right of rescission ... no money shall be disbursed other than in escrow, no services shall be performed and no materials delivered until the rescission period has expired and the creditor is reasonably satisfied that the consumer has not rescinded."). Here, because Doral's disclosure correctly stated that rescission of the refinance loan would cancel the security interest contemplated by that loan, and would impact only the refinance transaction, it satisfactorily disclosed the effects of rescission as required by 12 C.F.R. § 226.23(d). [FN7]

That said, it is true that the disclosure statement plaintiffs received did not affirmatively inform them, as the H-9 form would have, that rescission of the refinance transaction would not also rescind their original mortgage. [FN8] However, we do not require perfect disclosure. The question before us is not whether the notification in Form H-9 would have been more complete than the notification plaintiffs actually received, but only whether the notification plaintiffs actually received met the requirements of the clear and conspicuous standard laid out in Regulation Z. Evaluating, as we must, Doral's disclosure from the vantage point of the hypothetical average consumer, *see Palmer,* 465 F.3d at 28, we conclude that because plaintiffs were told, clearly and conspicuously, that rescission would only operate as to their pending refinance transaction, any conclusions that they might have drawn from that disclosure about their previously existing mortgages were unreasonable (and, thus, not a valid basis for any TILA claim). [FN9] *See Gambardella v. G. Fox & Co.,* 716 F.2d 104, 118 (2d Cir.1983) (TILA disclosure that "requires the consumer to exercise some degree of care and study" suffices and "perfect disclosure" is not required). Two other circuits (albeit only one in a published opinion) have reached this same conclusion, where Model Form H-8, or a form patterned on it, was used for a same-lender refinancing transaction. *See Veale,* 85 F.3d at 580 ("We hold that ... the H-8 form provides sufficient notice that the current transaction may be canceled but that previous transactions, including previous mortgages, may not be rescinded."); [FN10] *Mills v. EquiCredit Corp.,* 172 Fed.Appx. 652, 656 (6th Cir.2006) (approving of the district court's conclusion that "assuming that the form used by EquiCredit was technically incorrect ... the form

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2007 WL 1153052                                                                                                Page 6

--- F.3d ----, 2007 WL 1153052 (1st Cir.(Puerto Rico))

(Cite as: 2007 WL 1153052 (1st Cir.(Puerto Rico)))

nonetheless informed Appellants of their right to cancel the loan transaction") (unpublished opinion). Doral's disclosures were not perfect in this case, but they were sufficient to meet the statutory and regulatory requirements of the TILA and Regulation Z. See Palmer, 465 F.3d at 29 ("[A]ny creditor who uses plain and legally sufficient language ought to be held harmless.").

### III. Conclusion

*6 For the reasons given above, we *AFFIRM* the district court's dismissal of plaintiffs' claims.

FN1. This factual disagreement is of potential import because the TILA rescission provisions do not apply to transactions "which constitute [ ] a refinancing or consolidation (with no new advances) of the principal balance then due and any accrued and unpaid finance charges of an existing extension of credit by the same creditor secured by an interest in the same property." 15 U.S.C. § 1635(e)(2). Doral alleges that the $1,300 remitted to the Santoses a month after the transaction was surplus escrow funds accumulated under the Santoses' original mortgage. However, because this case reaches us on a motion to dismiss, we presume that plaintiffs' allegation is correct: that the Santoses received a new money advance as part of their refinance. See Rogan, 175 F.3d at 77.

FN2. According to plaintiffs' complaint, Doral Mortgage is a wholly owned subsidiary of Doral Financial.

FN3. Because we accept as true plaintiffs' well-pleaded factual allegations, we cannot consider Doral's argument, which appears to have factual support in the record, that the Rojases obtained their original home loan from Southern Mortgage, rather than Doral. If true, the Rojases' transaction was not a same-lender refinancing, meaning that plaintiffs' central argument--that same-lender refinancing requires

specialized disclosures--would not apply to the facts of the Rojases' transaction.

FN4. In their complaint, plaintiffs purported to bring their claims on behalf of two classes of similarly situated consumers. However, the district court dismissed plaintiffs' claims in their entirety before the litigation reached the class certification stage. In any event, we have recently held that class certification is not available for rescission claims brought under the TILA. See McKenna v. First Horizon Home Loan Corp., 475 F.3d 418, 423 (1st Cir.2007).

FN5. While the facts in this case do not require us to reach the issue, we have previously noted that there is statutory and case law support for the proposition that the model forms provide lenders a safe harbor protection whereby "adherence to a model form bars a TILA non-disclosure claim entirely." Palmer v. Champion Mortgage, 465 F.3d 24, 29 n. 5 (1st Cir.2006); see also 15 U.S.C. § 1604(b) ("The Board shall publish model disclosure forms and clauses for common transactions *to facilitate compliance* with the disclosure requirements of this subchapter ....") (emphasis added).

FN6. We do not follow the Seventh Circuit's view that "TILA does not easily forgive 'technical' errors." **Handy v. Anchor Mortgage Corp., 464 F.3d 760, 764 (7th Cir.2006)** (quoting Cowen v. Bank United of Texas, 70 F.3d 937, 941 (7th Cir.1995)). As the Eleventh Circuit has explained, Congress in 1995 rejected this hyper-technical view of the TILA, by imposing a temporary moratorium on TILA class actions and then amending the statute out of concern that courts were "allow[ing] plaintiffs to rescind a mortgage as a result of minor TILA violations." Smith, 108 F.3d at 1327 n. 4. In response to Congress's actions, most courts have

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2007 WL 1153052

Page 7

--- F.3d ----, 2007 WL 1153052 (1st Cir.(Puerto Rico))

**(Cite as: 2007 WL 1153052 (1st Cir.(Puerto Rico)))**

adopted the clear and conspicuous standard in place of a rule of hyper-technicality. We believe this is the correct position, as we have recently stated. *See McKenna,* 475 F.3d at 424 ("In taking this step, Congress made manifest that ... it had not intended that lenders would be made to face overwhelming liability for relatively minor violations.").

FN7. In its 1996 commentary to the revised regulations, the FRB clarified that Model Form H-9 could be used for same-lender refinances where "the original note and mortgage are extinguished and new documents are executed to cover both the outstanding debt and the amount borrowed in the new transaction." 61 Fed.Reg. 49,237-02 (1996). However, the FRB's statement that Model Form H-9 *could* be used in such a transaction does not mean that use of that form is *required.* Indeed, because the TILA does not require lenders to use the model forms, the only test for compliance is whether the notice actually given informed the consumer clearly and conspicuously of his rights and obligations, consistent with Regulation Z.

FN8. Model Form H-9 explains, in part:
If you cancel this new transaction, it will not affect any amount that you presently owe. Your home is the security for that amount. Within 20 calendar days after we receive your notice of cancellation of this new transaction, we must take the steps necessary to reflect the fact that your home does not secure the increase of credit.
*See* 12 C.F.R. § 226.23 (app.H-9).

FN9. Plaintiffs cite two cases in an attempt to rebut this conclusion. Neither is helpful to their cause. The first, *Handy v. Anchor Mortgage Corp.,* 464 F.3d 760 (7th Cir .2006), is not persuasive for two reasons. First, *Handy* adopts a hyper-technical compliance requirement, a position we have rejected. *See McKenna,* 475 F.3d at 424. Second, *Handy's* facts are quite different from those here. In *Handy,* the court concluded that the consumer was not clearly informed of her rescission rights where she received *both* Model Form H-8 and H-9, and her loan was an original transaction, rather than a refinance. **464 F.3d at 764.** Plaintiffs also cite our recent decision in *Palmer,* 465 F.3d at 24. However, our conclusion here is consistent with *Palmer,* which held that we review the adequacy of a lender's notice under the standard of objective reasonableness. *Id.* at 28 ("[W]e, like other courts, have focused the lens of our inquiry on the text of the disclosures themselves rather than on plaintiffs' descriptions of their subjective understandings.").

FN10. Plaintiffs assert that *Veale* is no longer good law because subsequent amendments and regulatory changes have overruled *Veale.* This argument is unpersuasive. Plaintiffs maintain that the 1995 congressional amendments to the TILA meant that "a creditor's use of the wrong model disclosure form ... would not be protected." This is incorrect, for the simple reason that the TILA does not require use of the model forms at all. In addition, as noted earlier, *supra* n. 6, the 1995 amendments were intended to reduce, not increase, lender liability for minor violations.

--- F.3d ----, 2007 WL 1153052 (1st Cir.(Puerto Rico))

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.